By the Court—Woodruff, J.
At the time of the grant to Thomas Clarke, under which the plaintiffs herein, or their devisor, claimed title to the lot of ground at the southwest corner of Burling slip and Water street (viz., in 1692,) the defendants had no title to the lands lying-under the waters of the East river below low-water mark.
All the title, therefore, legal or equitable, to any land, which passed by force of that grant, was limited towards the East river by the line of low-water mark. The land under water extending beyond that line was vested in the Crown, and could not be granted by the defendants.
*384 Heither did that grant operate upon the defendants as an estoppel, for they did not profess nor attempt to grant, nor warrant to the said Clarke, any land beyond that line.
I think the conclusion direct and obvious, that by force of the grant to Thomas Clarke, neither the plaintiffs, nor their devisor or ancestor, acquired any right to land lying in the river beyond low-water mark, nor could they by virtue of such grant compel the defendants to procure or convey to them such title.
That this is so will appear, if it be supposed, for the purposes of the question, that the Crown (in whom the title to the lands was vested) had never granted the lands below low-water mark to the defendants.
But by the grant in question the defendants did expressly covenant that if the said Clarke performed the conditions of the grant, he, his hems and assigns should have, use, enjoy, take and hold to his and their own proper use all and all manner of profits, benefits, advantages and emoluments growing, arising or accruing by or from the wharf to be made, erected and built by him upon the outermost end of the land granted. By the previous covenant for quiet enjoyment, the defendants assured him the full use and enjoyment of the whole of the granted premises, but having provided that he should build, keep up and maintain a wharf upon the outermost end, along low-water mark, which should be a public street or way for the use of all the inhabitants, the subsequent covenant was added in order that such giving up of a portion of the granted premises to the public use, as a street, might not seem to deprive him of the same for any purpose which was consistent with the use thereof by the public as a street.
The result was, that on the performance of the conditions, Clarke became and was the owner in fee of the whole granted premises, subject to the public use, as a street, of the portion lying along low-water mark—protected by an express covenant that he should have, hold, use and enjoy all the profits, benefits, advantages and *385 emoluments arising or accruing therefrom (subject, of course, to the public use as aforesaid.)
These rights were, in respect to the exterior line, nothing more, practically, than the right to receive wharfage from those who should use or make fast to the premises; but this right was, I think, clearly a part of the subject granted. The soil itself on which the wharf was built, passed by the grant, and but for the clause requiring a street to be laid out, the right would have been entirely clear, and would have been protected by the general covenant for quiet enjoyment, without the aid of the special covenant above referred to; and the right is, 1 think, plainly protected (subject to the public use of the street) by all the covenants in the grant, viz., the covenants for quiet enjoyment, against incumbrances, &c., and for further assurance during the then next seven years ensuing the date thereof.
It follows that the right of Thomas Clarke to the wharfage and emoluments to arise or accrue from the wharf, lay in grant, and not in covenant merely; it was part of the thing granted; it was a necessary incident to the fee of the land granted, and on which the wharf was built, just as truly as the use of any other part of the lot passed with the grant of the fee of the lot.
The fact that the right was protected by a special covenant, assuring the enjoyment to him, did not change the character of the grant in this respect; it remained a part of the subject granted, and granted in fee. These rights, so secured, therefore, passed to the grantees and devisees thereafter succeeding to Thomas Clarke’s title; and the covenant was one of their assurances of title passing with the fee of the land, just as any other covenant in the deed passed with the land granted; and it was not, as the defendants claim, a mere personal covenant.
In this aspect, therefore, the plaintiffs’ devisor or ancestor in 1749, was the owner of a wharf extending into the Bast river, by grant from the defendants, protected by their covenant for quiet enjoyment, and a somewhat more *386 special covenant that he should forever have, take and enjoy for his own use all manner of profits, and of course among them the wharfage which might accrue, therefrom.
In the meantime, in 1730, by the Montgomerie Charter the defendants had become the owners in fee of the la’nd under water, extending four hundred feet into the river, in front of the wharf in question. But by this acquisition, they acquired no right to interrupt the convenient access to the wharf which had been erected by their procurement, and which was protected by their covenant; and on the other hand, that acquisition in no wise enlarged the previous grant, nor conferred upon the owner of the wharf any greater or other rights than he had before.
In one respect, the position of the owner may, perhaps, have been improved: the defendants, by obtaining the grant of the land under water in front, were placed in a situation in which they had power to perform to the fullest extent the covenant securing to their grantee and his assigns the use of the wharf as such forever.
But, as already observed, the defendants, in virtue of .their ownership of the lands under water, were not absolved from their covenant, and the moment the lot in front was so filled in as to obstruct the use of the wharf, the defendants were liable. Any filling in or erection which constituted such an obstruction was a private nuisance. I think it clear that had a Oourt of Equity been applied to, the defendants would have been restrained, and the lease to Provoost and the filling in prevented.
Doubtless the defendants, in virtue of their powers over the subject of streets and wharves, might have regulated that part of the city as the public interest should require. In the exercise of those powders they would have proceeded according to the laws permitting the taking of private property for the public use, and the owner would receive such compensation as by such laws he might be entitled to; but they could not deprive the owner of that' wharf of his profits to arise therefrom, by converting the lot in *387 front to a private use; and their doing so was a breach of covenant, for which they were liable.
In a loose sense it may be said that the owner of that wharf was in fairness entitled to have a grant of the land in front, if the defendants granted it to any one, but no rule of law or equity required the defendants to grant it to such owner.
In this state of the rights of the parties the defendants did give a lease of the ground in front of the wharf, and since that time the ground has been filled in so that no profits can, nor so long as Water street continues to be a public street, will arise or accrue from the wharf which belonged to the ancestor or devisor of the plaintiffs. It is found that the space between Water street and Front street'was filled in, in 1755, more than one hundred years ago, and the space between Front street and South street was filled in, in 1807, more than fifty years ago. This filling in was of course permanent, and in its very nature was fixed aud perpetual.
There is no warrant for the suggestion, that the defendants had so granted the right to have the wharfage, that upon the filling in of the space in front, the owner of the wharf was entitled to the wharfage on the new water-line and to the intermediate space. We know of no rule or principle of law or equity upon which the line or boundary of an owner is to be deemed ambulatory, merely because his grantor has interposed a permanent obstacle to its enjoyment in the mode contemplated in his grant. It may be possible so to grant the right of wharfage along the river, as that the grantee may take the wharfage from whatever wharf (more or less extended into the water by the grantor) it may arise, but a grant of a definite piece of ground to be filled or built upon as a wharf, with all the profits derivable therefrom, however it may entitle the grantee to prevent an obstruction to its use as a wharf, or to have damages for such an obstruction, gives no right to claim wharfage from another wharf in front, nor does such *388 an obstruction alter or enlarge the definite boundaries of the grant.
The consequence is, the obstruction having been interposed, it having been made permanent, the owner of the wharf had a claim to redress, and that could only be a claim to damages for the injury to his land, an injury inflicted in violation of the defendants’ covenant. And that injury was fully and finally consummated and made perpetual as early as the year 1755. For it is not apparent that the subsequent filling in between Front and South streets can affect this question.
In this aspect of the case the question seems to be reduced to this: Can the heirs-at-law or devisees of Peter P. Van Zandt, who died in 1811, maintain an action for such an injury as is above described ?
In the first place, the claim for damages vested in Peter P. Van Zandt was a mere chose in action. If that claim be regarded as single and entire, it accrued as soon as a permanent obstruction to the use of the wharf was created, and the measure of damages was the whole depreciation in the value of the wharf caused thereby. If it be regarded as a claim to recover the amount of annual income, of which by reason of the obstruction he had been deprived, and it be confined to past injury only, the result •is the same in this respect, viz.: so far as such damages were sustained prior to his death. It was a chose in action, and it passed to the personal representatives of the deceased, and the present plaintiffs, as heirs-at-law or devisees, have no title thereto.
But I think it clear that if an action had been brought by Peter P. Van Zandt in his lifetime, for the damages caused by the injury to Ms wharf and the breach of the defendants’ covenant, that recovery would have embraced entire damages for the whole injury, and he could not have brought successive actions year after year for the annual value of the wharf as damages. As a wharf, it was destroyed, and it had no further value, and could have none; as a wharf it could not thereafter yield any income.
*389 If one’s lot be trespassed upon, and the owner be deprived of the use thereof for a year, its annual value is the measure of damages. If one’s horse is wrongfully taken and retained for a month, the value of its use for one month may be recovered as damages; but if one’s horse be killed, there can be but one recovery therefor, and that is for the value of the horse; and if by some fixed and permanent erection, one’s land be rendered perpetually and finally valueless, or one’s dwelling house be injured so as to be untenantable, the claim for damages is not a claim to recover an annual rent therefor, and by successive actions to be brought year after year so long as grass grows and water runs. (See Leffingwell v. Elliott, 10 Pick., 204 ; Brooks v. Moody, 20 Pick., 474 ; Lethbridge v. Mytton, 2 B. Ad., 773 ; Hodsoll v. Stallebrass, 11 Ad. & Ellis, 301.)
It is not like cases of continuing trespasses in which the guilty party may be said to maintain a nuisance, or in theory repeat his wrongful act. Here, the matter complained of once done is done forever, as truly as if the wharf, as a wharf, had been annihilated. So in actions on the covenant for quiet enjoyment when the plaintiff is evicted, the right of action is immediate and the recovery of damages once had is final, and generally the action for any breach of covenant arises immediately upon the happening of the breach, and the whole damages are to be recovered in the one action.
I think, therefore, the whole cause of action accrued to Peter Pra Van Zandt or his ancestor, and that the plaintiffs have no cause of action in respect thereto.
I have treated of this branch of the subject as I would if this action had been brought to recover damages for an injury to the plaintiffs’ land. If it were possible for them to maintain such an action upon the facts disclosed in this case, I should greatly doubt the propriety of allowing such a recovery upon the present pleadings. There is nothing in the complaint which would suggest to the most careful student, that the plaintiffs intended any such claim; they *390 claim title to certain premises in front of or in the vicinity of a wharf which they own, and ask that their title to such other premises be established and that defendants be compelled to execute a grant therefor. They recover, not for any breach of an agreement to give such a grant, but for a breach of a covenant for the enjoyment of the wharf of which they have already all the grant they are entitled to. It seems to me that if such had been their action the defendants would not only have had a sufficient defense upon the grounds already suggested, but that other defenses would have been readily available, which, in the defendants’ answer in that case, might have been set up for their protection.
But it remains to notice the claim, as the plaintiffs do, in fact, make it in their complaint, viz., to have their title to the land in front established, and a grant from the defendants compelled.
It has already been shown, I think, that by virtue of the grant to Clarke, they have no such title to the relief they seek; he never had any right or title to the land below low-water mark.
The plaintiffs, however, rely on the proceedings of the defendants, as entitling them to the land.
How, in the first place, those proceedings did not convey the title; if they did, there was no occasion for the plaintiffs to bring this suit; an ejectment would be the proper remedy. But they did not give title, nor purport to grant the land. At most, they were the consent of the defendants to give a grant upon certain conditions, to which they were informed Peter P. Van Zandt and one of the executors of Jacob Brewerton had signified their assent. Assuming that this would amount to a contract binding the defendants, these observations are pertinent.
As an action for damages for breach of that contract, this action cannot be- sustained, because such cause of action is vested, not in the heirs but in the personal representatives.
As an action to compel specific performance of the con *391 tract, it will suffice to say that, after the lapse of more than seventy years, a Court of Equity would not entertain such an action. Every presumption exists that some other arrangement was made between the parties, and the contract abandoned or in some manner satisfied.
And in either aspect the plaintiffs’ case is radically defective, in this that it does not appear that either Van Zandt or the representatives of Brewerton or Provoost ever tendered performance on their part, and without that they could have no claim to damages or to specific performance.
I think the case depends upon no principles that are obscure or uncertain, and that the plaintiffs have here no cause of action upon any facts proved or found. The judgment should therefore be reversed and a new trial be ordered; costs to abide the event.
Hoffman, J.
— There were some propositions stated in the opinions delivered when the case was before me, at Special Term, on demurrer, and when it was tried, which I am satisfied are correct, and tend to explain my views of the ease. They are also in conformity with positions of Mr. Justice Woodruff in the opinion of the Court.
In 1692, when the Corporation conveyed to Clarke the ninety-five feet on the East river, at low-water mark, “with the right of all slippage and wharfage in front of the premises,” they had a right and title down to low-water mark, and none beyond it. (Dongan’s Charter, §§ 3 and 4 ; Hoffman’s Law of the Corporation, 148.)
Then by the Charter of 1730, the Corporation obtained from the Crown, in effect, the right to four hundred feet beyond low-watér mark into the river. Ho right attached to the owner of the slip between high and low-water mark, to even a pre-emptive privilege for any part of this four hundred feet. A practice prevailed of tendering the preemption, but it was never allowed or recognized as a legal right.
By a proviso contained in the thirty-eighth section of *392 the Charter, “Nothing herein shall be construed to empower the Mayor, Aldermen and Commonalty, to wharf out beyond any persons who have prior grants from us, or some or one of our predecessors, of quays or wharfs, beyond low water, without the actual agreement or consent of such persons, their heirs or assigns, owners of such quays or wharfs.”
This provision was limited to grants of Montgomerie as Governor, or his predecessors under the Crown. It left the question as to legal rights and powers of the Corporation to wharf out in front of their own grantees, with covenants such as in the present case, to the decision of rules of law, and the control of courts of justice.
It is clear to my mind, that the Corporation were not absolutely restricted by their grant or covenant, from extending the frontage on the river, and filling up further into the river, for important public purposes. But it could not, by so doing, discharge itself from a responsibility incurred by its grant or covenant. In some mode, compensation was due to its grantee.
In the year 1749, the lease was made to Provoost of the parcel in front of the granted premises, for the term of ninety-nine years. In the opinion of Alexander Hamilton and Samuel Jones, this lease is treated as a breach of the covenant with Clarke and his assigns.
In 1755, the filling in was completed from Water street down to Front street, and the pier of eight feet wide on the side was finished. In 1807, it was further filled in and carried forward into the river from Front to South street. The whole space in front of the twenty-six feet acquired under the Clarke grant, is now, and has been, an open street down to the easterly side of South street since 1835.
The acts and negotiations between Peter P. Van Zandt and the Corporation, after the opinion of Hamilton and Jones, all proceeded upon the ground of a claim resting in damages, to be liquidated, as once proposed, by the transfer of a certain parcel of ground.
The order of reference which was made in this cause by *393 me proceeded on the same basis, viz.: to ascertain, in the best manner I could suggest, some mode of attaining, a* fair compensation in the shape of damages, adjusted upon such profits as it might be shown could have been received.
The principle was to ascertain what could have been received for wharfage for the front on the east side of Water street until the filling up to Front street, and then on Front street till the filling up to South street.
This was not on the basis of a right having passed from the front on Water street to that on Front, and so to that on South street; but as a mode of arriving at what would have been earned, had the frontage remained unchanged.
The propositions of Hr. Justice Woodkxjit, as I understand them, are: That the claim for damages accrued to Peter P. Van Zandt, as early as 1755, when the ground, from Water to Front street, was permanently filled up, and made a, complete and "permanent obstruction. Had he sued in his lifetime, he must have recovered his whole damage iu one suit. There could not have been such a succession of breaches as to warrant successive actions. Then the right was a right in action vested fully and entirely in Van Zandt, at his death in 1811, and which went, upon his death, to his personal representatives. “The present plaintiffs, as heirs-at-law, or devisees, have no title thereto.”
T have examined the following leading cases, and it appears to me that the first of these propositions is sustained by them, and is undoubtedly correct: Hambleton v. Veere, (2 Saunders, 170 ;) Fish v. Folley, (6 Hill, 54 ;) Crain v. Beach, (2 Barb. S. C. R., 120, and 2 Comstock, 90 ;) Blunt v. McCormick, (3 Denio, 283 ;) Shaffer v. Lee, (8 Barb. S. C. R., 412 ;) Royalton v. Royalton and Woodstock Turnpike Company, (14 Vermont, 311,) and Hodsoll v. Stallebrass, (11 Adol. & Ellis, 301.)
But it appears in the case, though not stated in the findings, that Peter P. Van Zandt, by his last will and testament, dated October 5,1810, bequeathed as follows: “And *394 whereas the Corporation of Hew York, in the year 1748, did grant to David Provoost (I being of eighteen years of age and living in the country) a pier or street for ninety-nine years, before the front part of my dock, joining on Burling slip, from Water street to Front street, and thereby deprived me of my wharfage of said property; my will is, and I do hereby devise and bequeath all my right, title, claim, and interest in the premises unto my said children or the survivors of them and their heirs, equally to be divided between them, share and share alike.”
What objection is there to the effect of this will, being to transfer all the right to the wharfage or damages and all right of action which Van Zandt had, to his children? The complaint professes to derive the title of the plaintiffs through such children, although only eleven-fifteenths are accounted for.
Ho objection has ever been taken to the right of these parties to sue, if there was ally right in or under Peter Van Zandt.
A right to a specific legacy of personal property will vest, and the legatee may enter and take possession with the assent of the executors. (Tole v. Hardy, 6 Cow., 339 ; Matthews on Executors, p. 176 ; Law Library, vol. 9.) The assent may be expressed or implied. (Id.)
When such an assent is obtained, the legatee may bring trespass for injury done before the assent. (Chitty on Pleadings, vol. 1, p. 169 ; citing Bro. Abr., Tit. Trespass, pl. 25.)
I should think that the executor’s assent would be implied after a considerable lapse of time from the death of the testator, when the plaintiffs were the beneficiaries, and no objection to their right to sue had been taken.
Supposing that an action for damages would lie in favor of the present plaintiffs, the next question is, can the present action be treated as such ? Can damages be recovered under it ?
The complaint would be quite defective in allegations to warrant a judgment for damages, had the summons *395 been for a money demand, and the prayer of the complaint framed for the payment of the damages sustained. Neither the nature, the extent, nor the causes of damages are set forth, except merely that there was a covenant and a breach; but the object of the complaint, and what it is framed to obtain, and demands payment for, is the land under water in front of the premises of Van Zandt, on Water street; and that tlie title of the plaintiffs extending from Water to South, twenty-six feet in width throughout, and to the wharfage in front of the same, be established, and that the defendants execute a grant for the same.
I concur with Mr. Justice Woodruff, in the opinion that under such a complaint, a recovery could not be had upon the trial, for damages. The cases cited of Morss v. Elmendorf, (11 Paige, 277,) and Saltus v. Genin, (3 Bosw., 250,) appear to me decisive.
But in the points of the plaintiffs, the relief asked is varied. They ask for a conveyance of parcel B. on the diagram annexed to the case, extending from Front to South street.
This claim, thus modified, is placed upon the action of the Corporation in various reports and resolutions set forth in the case. They result in this: that if Van Zandt would release all claim against the Corporation for or on account of slippage, wharfage, or any other matter touching the slip, or the water lots adjoining the same, the grant of the parcel in question should be made. There is a report from the Clerk of the Board, that Van Zandt had stated his willingness to comply with the conditions, and take the grant, and then an order that the grant be made.
This final act was in February, 1795. Suppose Van Zandt had required performance of this contract .within a year after the last resolution in 1795, it would have been essential for him to have proven a tender of the release made a condition of the grant, and a demand for the grant. The lapse of sixty-two years does not render this obligation less imperative. No tender or demand is in evidence as having ever been made.,
*396 Again, the Corporation, for a long series of years, could have complied with the demand. Van Zandt, sleeping upon his rights, allows the space to be occupied as a public street. The Corporation cannot dispossess the'public of the easement, certainly not without a closing upon.application to the Supreme Court, which nothing now known would justify. The claim, evenym this footing, has been converted into one for damages, by the plaintiffs’ and their ancestors’ own conduct.
I am satisfied that I did wrong at Special Term in entertaining the action, even for damages.
The judgment must be reversed, and a new trial granted.