## N. Y. SUPERIOR COURT.

### JOHN W. GREENE agt. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Railroads — Street obstruction by — The extent of their liability — Right of action by owner of the fee of premises to recover damages sustained by reason of the closing of St. Johns Park, the erection of a freight depot thereon, the construction and continued existence of a steam railroad through Hudson street, the operation of the railroad and the manner of its operation.*

In an action brought by plaintiff as owner of the fee since 1874, of premises situated on the north-westerly corner of Hudson and Laight streets in the city of New York, to recover damages sustained by reason of the closing of St. Johns Park, the erection of a freight depot thereon, the construction and continued existence of a steam railroad, through Hudson street, the operation of a railroad and the manner of its operation :

*Held*, 1*st.* That the plaintiff has no claim by reason of the discontinuance of the park or square or the erection or the mere continuance of a freight depot thereon.

Under the circumstances the plaintiff cannot complain that the depot erected by the railroad covers the whole area formerly occupied by the park or square. He is bound to show an easement in the park or square either by express grant or by dedication. In either case the burden of proof is upon him. No express grant is shown.

Before the law will, in the absence of an express grant, protect a mere right to a prospect or air over land separated from the plaintiff's premises by an intervening street, it must affirmatively appear that the prospect and the air were within the contemplation of the original parties as objects of the dedication.

The mere facts that Trinity church in 1797 had a map made of its property, which, among other parcels, contained a tract marked Hudson square, and that in 1805 one of the plaintiff's predecessors in title purchased from Trinity church the premises in suit as a lot bearing a certain number on said map, do not establish that one of the objects for which the square was marked out was to secure to the lot sold a prospect and a passage of air over the space.

*Held*, 2*d.* That the plaintiff has no cause of action for damages by reason of the construction and continuous existence or maintenance of the railroad.

The law of the public street of a city is motion. Any use of a street, though a new one, which does not materially abridge or obstruct the

NEW YORK PRACTICE REPORTS. 155

Greene agt. New York Central and Hudson River Railroad Co.

right of passage and repassage, of ingress and egress, and to light and air of the abutting owner, gives no cause of action; but every unnecessary material abridgement or obstruction, though of a temporary character, and every continuous material abridgement or obstruction, though made in the pursuit of a lawful business, and to some extent called for by circumstances arising in the course of such pursuit, by which the right of an abutting owner to pass and repass, to have free access to and egress from his premises, and to enjoy the light and air from the street, is unreasonably affected, gives to the injured party, in case of special damage therefrom, a right of action against the offending party for the recovery of the damages actually sustained; and in order to determine any such question each case must be disposed of on its own facts and circumstances.

This principle applies to all infringements of and obstructions in the streets of a city, irrespective of their nature and of the persons by whom they are caused.

*Held*, 3*d*. That the plaintiff, upon the proofs now before the court, and such additional proofs as he has offered to give and may properly give upon the issues as now restricted, has the right to have his case submitted to the jury.

*Held*, 4*th*. That the rule of damage is the impairment of the rental value of the premises from the year 1874, when the plaintiff became the owner, to the time of the commencement of the action, and the impairment must be determined with reference to the condition in which the premises were in that year, and with reference to the uses for which the premises were then rented, or to which they could have been put in the condition they were in, but for the excessive exercise, if there was any, of defendant's business. But before any such special damage can be recovered it must appear affirmatively that it was directly and wholly caused by some act on the part of the defendant, which, within the rules laid down, was actionable if accompanied by special damage.

In this case the jury rendered a verdict in favor of the plaintiff for six cents damages.

*At Circuit, March,* 1883.

MOTION to dismiss the complaint.

*Julien T. Davis* and *J. B. Miller*, for plaintiff.

*Frank Loomis* and *H. H. Anderson*, for defendant.

FREEDMAN, *J.* — This case presents so many interesting questions, and the authorities cited and relied upon by the

learned counsel for the parties are so numerous, that, owing to the short period I had for their examination, the result of my examination must be announced briefly and without much elaboration.

· The action is brought by the plaintiff as owner of the fee, since 1874, of premises situated on the north-westerly corner of Hudson and Laight streets, in the city of New York, to recover damages sustained by reason of the closing of St. John's Park, the erection of a freight depot thereon, the construction and continued existence of a steam railroad through Hudson street, the operation of the railroad and the manner of its operation.

In 1879 the corporation known by the title of "The Rector and Inhabitants of the city of New York in communion with the Protestant Episcopal Church in the State of New York" (which for convenience sake I shall hereafter style the corporation of Trinity church), as owner in fee simple of a large tract of land in that vicinity, caused a map to be made of its property on which St. John's Park appears under the name of Hudson Square. In 1803 the said square seems to have been set apart by the corporation as a private ornamental park or square for the benefit of the persons who had leased or should lease from Trinity church adjacent lots of land directly fronting towards the said park or square on each side thereof. The lessees of such adjacent lots subsequently acquired title to their respective lots by purchase from Trinity church. The owners of all other lots in the vicinity, though they also derived their title from Trinity church, were to have no right or claim to the continuance of the park or square as such.

· The park or square extended to the east side of Hudson street, from Beach street on the south to Laight street on the north. The premises in suit are situated on the north-westerly corner of Hudson and Laight streets. They, therefore, never fronted towards the said park or square, and neither under the arrangement pursuant to which in 1803 the park or square seems to have been set apart, nor under the declara-

tion of trust executed by Trinity church in 1827, had they the right or easement attached to them that the park or square should be continued and preserved as such.

By deed of March 2, 1867, Trinity church with the assent of the requisite number of adjacent owners whose lots fronted towards the park or square, and in consideration of the sum of $1,000,000, conveyed as it lawfully could do, the said park or square to the Hudson River Railroad Company. The description of that deed by legal construction conveyed the fee to the center of the streets by which the park or square was bounded, but as matter of fact the fee of said streets had already been ceded by Trinity church to the corporation of the city of New York in trust for the use of the public.

The freight depot erected by the Hudson River Railroad Company covers the whole area formerly occupied by the park or square. But of this the plaintiff cannot, under the circumstances stated, complain. He is bound to show an easement in the park or square either by express grant or by dedication. In either case the burthen of proof is upon him. He showed no express grant. Now, before the law will, in the absence of an express grant, protect a mere right to a prospect or air overland separated from the plaintiff's premises by an intervening street, which is all the plaintiff's claim as to the park or square amounts to, it must appear affirmatively that the prospect and the air were within the contemplation of the original parties as objects of the dedication. There is no proof that the park or square was ever dedicated to the use of the public in general. Upon plaintiff's own showing it was not. Nor do the mere facts that Trinity church in 1797 had a map made of its property, which, among other parcels, contained a tract marked Hudson square, and that in 1805 one of plaintiff's predecessors in title purchased from Trinity church the premises in suit as a lot bearing a certain number on said map establish that one of the objects for which the square was marked out was to secure to the lot sold a prospect and a passage of air over the square. The cases cited by the

plaintiff in support of such a claim are all cases in which the dedication of the park or square was either made for the use of the public in general or held out as an inducement to buyers. In the case at bar there is not only no proof of such an element, but the numbering of the lots on the map itself and the action of Trinity church in 1803 speak against it.

The plaintiff has, therefore, no claim by reason of the discontinuance of the park or square, or the erection or the mere maintenance of a freight depot thereon. The next question is whether the plaintiff has a cause of action by reason of the building of the railroad.

In 1846 the legislature of the state of New York duly passed an act for the construction of a railroad from New York to Albany, under which, and the acts amendatory thereof, the Hudson River Railroad Company was organized and the road built and operated until 1869, when a consolidation took place between the Hudson River Railroad Company and the New York Central Railroad Company, pursuant to which the company, which is the defendant at bar, was formed, and by which the operation of the road passed into the hands of the defendant. So far as the consent of the city was necessary for the building and the operation of the road within the limits of the city it was duly given. This has heretofore been expressly decided.

But neither the action of the legislature nor that of the city, nor the joint action of both, could divest any of the predecessors in title of the plaintiff of any vested right in the premises in suit or appurtenant thereto. This brings me to the consideration of the question as to what rights, as against the railroad company, such predecessor in title had in and to Hudson and Laight streets.

In 1849, when the railroad company attempted to lay its rails south of Canal street, a number of owners of real estate fronting upon Hudson street and other streets applied for an injunction restraining the company from laying any rails from the northerly line of Canal street and West street,

through Canal and Hudson streets, to Chambers street. In the course of that litigation, reported under the title of *Drake* agt. *The Hudson River Railroad Company* (7 *Barb.*, 508), it appeared that the parts of Hudson and Laight streets, with which we are at present concerned, were originally laid out by Trinity church, as owner of the fee of the land and the surrounding lands as streets, and dedicated to the public in general as such, and thereafter, in 1813, conveyed to the city in trust that the same should be kept open as streets for the use of the citizens of said city forever. The general term of the supreme court, after full examination of all the facts, deemed it unnecessary to determine whether the plaintiffs owned the fee of the soil of the streets, inasmuch as the land comprised within the limits of the streets had been dedicated by Trinity church to the public for the purposes of streets before any conveyances of lots were executed to anyone. It was expressly decided, however, that the city had full authority to regulate the public uses to which said streets could be put; that the construction of the railroad through Hudson street, of itself, infringed no private rights, provided the passage over the streets was substantially left free and unobstructed; that in such case no private property was taken for public use without compensation, within the meaning of the constitutional prohibition; and that for the reasons stated, no injunction could be issued or maintained. At the same time the rights of abutting owners and of the public were clearly defined, and their right of action for damages in certain contingencies affirmed. But of these matters I shall speak hereafter.

The points stated as having been expressly decided have remained good law ever since. The cases cited by the plaintiff contain no decision to the contrary, and in every case which in the course of the reasoning a *dictum* appears which seems to be in conflict, it will be found that additional facts were involved — such as, for instance, a material change in the grade of the street, an excavation or permanent obstruction.

Nor were the said points so decided shaken by the decisions in the elevated railroad cases, for these were placed upon the ground that the permanent structure of an elevated road, of the size and height it was made to appear, occupies so much of the street, and interferes so much with the ordinary uses of the street, and is so inconsistent with such uses as to work a destruction *pro tanto* of the easement which every abutting owner has as an appurtenance to his land, to light and air, and ingress and egress and that such destruction amounts to a taking of property.

The decision in *Drake* agt. *The Hudson River Railroad Company* is fatal, therefore, to the claim advanced by the plaintiff for damages by reason of the construction and continuous existence or maintenance of the road.

Aside from the reasons already stated, there are others equally fatal to plaintiff's claim for damages in so far as it is founded upon the erection of the depot in place of the park or square and the construction of the road. These matters in so far as they may be considered as obstructions, if they are such, constitute permanent obstructions, and if there was an easement in or to the park or square, or if the predecessors in title of the plaintiff owned the fee of the soil in Hudson street to the center of the street, the creation of the permanent obstructions immediately gave a claim for damages which, under the decision of *Van Zandt* agt. *The Mayor, &c.* (8 *Bosw.*, 375), became vested as a chose in action in the then owner of the fee and subsequently passed to the personal representatives of such owner. The present plaintiff, who acquired title by devise in 1874, has no title to such claim, if it ever existed. Moreover it is barred by the statute of limitations.

The plaintiff's claim has now been reduced to a claim arising out of the continued operation of the road, the manner in which since 1874 it was operated, and the manner in which defendant's business was conducted during the same period in the immediate vicinity of plaintiff's premises.

As the owner of property bounded by Hudson and Laight streets, the plaintiff has rights in said streets and an interest in the maintenance of them in their integrity ; but such right and interest consist merely in the use, benefit and enjoyment of them as public streets or highways for the legitimate uses and purposes of streets, and he has no private or exclusive right to, or property in, the use or enjoyment of them. All other citizens have an equal right with him to the use of them, even if he should own the fee of the soil to the center of the street, because the fee would be subject to the right of the public to travel over the surface of the street and to have the street continued forever as a public street. And the railroad company, as part of that public, it has been held in *Drake* agt. *The Hudson River Railroad Company*, has the same right, in common with others, to use the surface of the same, under the rules and regulations prescribed by the proper authority, for the purpose to which the lands forming the streets were dedicated to the public. Since that decision, it is true, the power of the mayor and common council of the city of New York to grant such privilege to a railroad company has been very much restricted by legislative enactments, and the power of the legislature itself has been restricted by constitutional amendments. But these changes of power do not affect the case at bar, because they have no retroactive effect.

A railroad having lawful warrant for its existence and operation cannot be a nuisance *per se.* Nor is the use of a street in a city for the purposes of a railroad, in a manner which does not materially abridge or obstruct the right of passage and repassage for other purposes, such an exclusive appropriation of the street as to amount to a nuisance or a purpresture. In these respects no distinction exists between steam and horse railroads. True, a steam railroad is more apt to become a nuisance than a horse railroad. But whenever it does so in the use of the mere surface of a street, the nuisance arises from the manner in which and the extent to which it is operated to the exclusion of the proper and ordi-

nary uses of the street. The fact is, that either may become a nuisance by an abuse of the public streets. It requires but little elaboration to demonstrate these propositions.

As was said in *Drake* agt. *The Hudson River Railroad Company*, a leading use and purpose of a public street is for travelers and others to pass and repass over the same, with horses, carriages and other vehicles, and on foot. All parties must concur in that definition as applicable to the right of way over the public streets of the city. Now does not the railroad, with its cars propelled by the application of steam or by animal power, come equally within the definition, as the cart, carriage or omnibus drawn by animals? It is a new mode of using the street, but it is still a use of it for passing and repassing through it, whether freight or passengers or both are transported. The law-making power, in the absence of constitutional restrictions, has authority to regulate the use of the highways by every species of carriage whether already known or susceptible of introduction on the highways, and the rule, if well settled, that the diminution to a moderate extent of the accommodation of the public, for the better accommodation of a larger portion of the public, does not involve the invasion of public or private right. Those who ride in their own carriages or whose business may be affected by the laying of rails in the street, are a minority. The railroad is a part of the history of the times, and when properly conducted a great public benefit. The greater portion of the community are accommodated and benefited in various ways by it, and the fact that a small number of people are inconvenienced, does not constitute the road a nuisance.

For these reasons it has been held that a railroad company having lawful warrant for its existence and operation may, as incidental to the right of transit, run trains through the streets of a city, establish a turnout so as to communicate with a station on the street, use the street for shifting cars and making up trains, and even stop its cars on the street to unload them.

But all the cases recognize the principle that any or all of these things must be done at a time and in a manner which is reasonable under all the circumstances. As long as that is the case the railroad company is not liable in damages to anyone ; and even the fact that at such intervals the owner in fee of a public street is prevented from loading and unloading wagons in front of his store would not constitute special damage. This has been held in *Hobart* agt. *Milwaukee City Railroad* (27 *Wis.*, 194 ; 9 *Am. R.*, 461).

So it is a well settled principle of law that the conduct of any business intrinsically lawful may give rise to a cause of action if under all the circumstances it occasions an unreasonable encroachment on the public highway. Thus in *Rex* agt. *Jones* (3 *Camp.*, 230), lord ELLENBOROUGH said : " A cart or wagon may be unloaded at a gateway, but this must be done with promptness. The defendant is not to eke out the inconvenience of his premises by taking the public highway into his timber yard ; and if the street be too narrow he must remove to a more commodious situation for carrying on his business."

In *King* agt. *Russell* (9 *East.*, 427) it was held that if the nature of the defendant's business were such as to require the loading and unloading of so many more wagons than could be done conveniently within his own private premises, he must either enlarge his own premises or move his business to a more convenient spot. And in *Moore* agt. *Jackson* (2 *Abb. N. C.*, 212) it was held that a systematic and continued encroachment on a highway, though for the purpose of carrying on a lawful business, is unjustifiable.

The same principle applies to the operation of railroads through the streets of a city of which the company does not own the fee. For a railroad, though having lawful warrant from the public authorities for its existence and operation, may be so operated as to destroy the right of an abutting owner to the use and enjoyment of the street. Trains on a steam railroad may be run in such numbers and in such rapid

succession, by day and by night, and in such close proximity to an abutting owner's premises as to render the street at all times impassable for him except perhaps on foot. A side track of a horse-car railroad may be so close to an abutting owner's premises as to cut off all access to such premises while encumbered for days and weeks with a row of cars not in ordinary use. The moment, therefore, that the operation of a railroad or the manner of its use become under all the circumstances of a case unreasonable as to a particular individual and special damage ensues in consequence thereof, the operation of the road or the manner of its use, though the road has lawful public authority for its existence and operation by which it is protected from being presented as a public nuisance becomes, as to the individual so injured, a private nuisance, and he may maintain an action for the special damage. And in the case of a continuing trespass causing continuous injury the authorities are to the effect that successive actions may be brought year after year, so long as grass grows and water runs.

I have, so far, discussed only the right of an abutting owner to the use of the street and to access to and egress from his premises bounded by the street. Under the decision of the court of appeals, in *Story* agt. *N. Y. Elevated Railroad Co.,* such owner's right to light and air from the street stands upon the same footing. A load of manure or raw hides may be carted past his premises and the smell enter his house. For that he is without remedy in the law. For the same reason he has no cause of action by reason of the escape of smoke, gas or cinders from the passing locomotives of a road in lawful existence and operation, provided the occurrences do not exceed a reasonable extent. So, any passing object may temporarily darken certain rooms. Against this the owner has no remedy. It is his privilege, in the pursuit of a lawful business and for a necessary purpose, to do the same to his neighbor. But a row of cars not in immediate use may be so placed against certain of his windows, and kept in such position for

Greene agt. New York Central and Hudson River Railroad Co.

such a lengh of time, as to materially interfere with the enjoyment of certain rooms, and for this the law would afford him redress.

The principle deducible from what has been said, and from many cases that might be cited, is that the law of the public street of a city is motion ; that any use of a street, though a new one, which does not materially abridge or obstruct the right of passage and repassage, of ingress and egress, and to light and air, of the abutting owner, gives no cause of action; but that every unnecessary material abridgment or obstruction, though of a temporary character, and every continuous material abridgment or obstruction, though made in the pursuit of a lawful business and to some extent called for by circumstances arising in the course of such pursuit, by which the right of an abutting owner to pass and repass, to have free access to and egress from his premises, and to enjoy the light and air from the street, is unreasonably affected, gives to the injured party, in case of special damage therefrom, a right of action against the offending party for the recovery of the damages actually sustained; and finally that, in order to determine any such question, each case must be disposed of on its own facts and circumstances.

The principle thus evolved applies to all infringements of and obstructions in the streets of a city irrespective of their nature and of the persons by whom they are caused.

The law being as stated, the plaintiff, upon the proofs now before the court and such additional proofs as he has offered to give and may properly give upon the issues as now restricted, has the right to have his case submitted to the jury.

The rule of damage is the impairment of the rental value of the premises from the year 1874 to the time of the commencement of the action, and the impairment must be determined with reference to the condition in which the premises were in that year, and with reference to the uses for which the premises were then rented or to which they could have been put in the condition they were in.

After the close of the evidence on both sides, the case was summed up by the counsel for the respective parties, whereupon FREEDMAN, J., charged the jury as follows, viz. :

*Gentlemen of the jury.* — The claim of the plaintiff, as owner of the premises situated on the north-west corner of Hudson and Laight streets, to recover damages for the closing of St. John's Park, the erection of a freight depot thereon, and for the construction and maintenance of a steam railroad on and through Hudson street, having been disposed of as matter of law, the only cause of action left with which you have any concern arises from the operation of defendant's railroad and the manner of its use. In determining that issué you must start with the proposition that the road was lawfully built, the freight depot extending from Laight street south to Beach street on the easterly side of Hudson street lawfully erected, and that the defendant had lawful warrant from the public authorities to operate the road, and in the course of the operation to use dummy engines to draw cars between the several passenger and freight stations of the road in the city of New York. As incidental to these rights the road, upon the evidence in the case, must be deemed to have possessed the right to maintain and operate the necessary switches and turnouts and curves and side tracts leading into the freight depot, and to use part of Hudson street for shifting cars and breaking up and making up trains and even loading or unloading some cars in case of special necessity. To this extent the road is protected by the law from being considered as a public nuisance.

But as against the plaintiff as an abutting owner this of itself is not a complete answer. He also had rights in Hudson street. Whether he owns or owned the fee of the soil to the center of that street subject to the easement of the public to travel over it, or only an easement in and to the use of the street as a public street, it is not necessary to determine with precision. In either case he had the right to travel over the street and to have free access to and egress

from his premises, and to enjoy the light and air from the public street, subject only to the right of the public to use and enjoy the street as a public highway for the legitimate uses and purposes of a public highway. This qualified right of the plaintiff the railroad company was bound to respect, and no action of the legislature or of the authorities of the city, nor the joint action of both could absolve it from the duty. For the right of the railroad company to use, without compensation to abutting owners, a public street of the city rests upon the theory that the railroad company is part of the public and that the use of a public street for the purposes of a railroad, though a new use, is not one which of itself is inconsistent with the proper and legitimate uses of the street by the public at large.

As between the plaintiff and railroad company, therefore, their rights were to a certain extent mutual. Both parties constituted part of the public. The consequence is, that as against the plaintiff the operation and use of the road could be carried only to an extent which, in view of what I have said, was reasonable under all the circumstances. As long as this limit was not exceeded, the plaintiff is without redress, and the defendant is entitled to your verdict. If the limit was exceeded the operation and use of the road constituted, as against the plaintiff, a private nuisance to that extent, and if the plaintiff sustained special damage thereby he is entitled to recover such damage.

To be more specific, the rule which you are to apply to the facts and circumstances of this case, is as follows, viz: For any use by the railroad company of the streets in the vicinity of plaintiff's premises which did not materially abridge or obstruct the right of passage and repassage, of ingress and egress, and to light and air of the plaintiff and his tenants, and especially for everything that was necessarily incidental to the right of the proper passage of the trains, whether it was noise, or smoke, or gas, or vibration of the walls, the plaintiff has no cause of action.

But for every material abridgment or obstruction beyond that, though of a temporary character which was not necessary to the proper lawful prosecution of defendant's business; and for every *continuous* material abridgment or obstruction of Hudson street, which was inconsistent with the legitimate uses of the street as a thoroughfare for the public in general, though made in the pursuit of the defendant's lawful business, and to some extent called for by the exigencies of that business, by which the right of the plaintiff and his tenants to pass and repass, to have free access to and egress from the premises, and to enjoy the light and air from the street, was unreasonably affected, the plaintiff may recover, provided he has shown special damage therefrom.

The rule of damage is the impairment of the rental value of the premises from the year 1874, when the plaintiff became the owner, to the commencement of the action in 1880, and the impairment must be determined with reference to the condition in which the premises were in that year, and with reference to the uses for which the premises were then rented or to which they could have been put in the condition they were in but for the excessive exercise, if there was any, of defendant's business. But before any such special damage can be recovered, it must appear affirmatively that it was directly and wholly caused by some act on the part of the defendant which, within the rules already laid down, was actionable, if accompanied by special damage.

I have given you now in general outline the essentials which the plaintiff must establish before he can recover. The burden or proof is upon him throughout and he must establish a case within the rules laid down by me by a preponderance of evidence. If upon any point material to his cause of action he presents merely an evenly balanced case, the defendant is entitled to your verdict.

And especially must I caution you to see to it that every damage you may wish to award compensation for is proven to have been the direct and natural result of some act on the

part of the defendant which, within the rules laid down by me, was actionable if accompanied by special damage. The testimony discloses many causes which may have co-operated. When Trinity church with the consent of the owners of the lots fronting on St. John's Park, on the south sides thereof, in 1867 conveyed the said park to the defendant, and it became known that a freight depot was to be erected thereon, it was but natural that all who had valued that vicinity as a choice locality on account of the existence of the park for private residences should remove, and that the character of the entire neighborhood should change. But of this the plaintiff cannot complain. So you have the panic of 1873 and the general depreciation of real estate throughout the city in consequence thereof. But of these matters the plaintiff cannot complain. There are many other circumstances which upon this branch of the case it will be your duty to look at, but you will remember them for yourselves. I can only repeat that any verdict for the plaintiff must be based upon affirmative proof of special damage which directly and naturally resulted from some act of the defendant that within the rules laid down, by me is actionable. If plaintiff's proof does not come up to this requirement it will be your duty to render a verdict for the defendant.

So if you should find that the actual rental of the premises from 1874 to 1880 amounted to what in your judgment upon the evidence was, notwithstanding the matters complained of, a fair one during that period, the plaintiff cannot recover. In this connection I must make, because I have been specially requested so to do, a reference to the testimony of Mr. Castree, who was placed upon the stand as an expert by the plaintiff, and whose opinion was that if no railroad had been there at all, $2,000 would have been a fair rental per year during the period in question. If this were the only testimony available to the plaintiff upon this branch of the case it would be fatal to plaintiff's claims, for the evidence shows conclusively that in spite of all the matters complained of the

Greene agt. New York Central and Hudson River Railroad Co.

plaintiff actually collected a good deal more. But it is not. While, therefore, the suggestion in the argument of plaintiff's counsel that Mr. Castree misunderstood the question propounded to him is entitled to no weight, because the witness was not asked to explain his answer or recalled for that purpose, the plaintiff on the other hand is not absolutely concluded by Mr. Castree's statement. It is simply a circumstance in the case to be weighed and considered with the circumstances covered by the testimony of the other experts called on both sides, and with the facts bearing upon the same point as disclosed by the whole case.

In any event it is your duty to carefully sift, weigh and consider the whole of the evidence and all the bearings thereof, for the purpose of arriving at a result which will do justice between the parties. The fact that the defendant is a rich and powerful corporation, must have no influence on your minds. You are to decide the issue submitted to you as you would if the defendant were a natural person, and to that end you must endeavor to divest yourselves of all prejudice if any you should have.

I have already instructed you that any verdict for the plaintiff must rest on affirmative proof of special damage directly caused by some act of the defendant, which, within the rules laid down by me is actionable, and that the burden to make such a case is upon the plaintiff. If his case does not come up to the requirements stated by me, you will find for the defendant. If his case does come up to said requirements, except that the evidence is of such a character that you cannot compute from it the damage sustained by the plaintiff, you will give to the plaintiff a verdict of six cents only. If his case comes fully up to said requirements, and you can compute the damage with certainty, you will give him a verdict which will fairly compensate him for the loss of rental ascertained by you, and state whether or not it is to carry interest.

Beyond making compensation you cannot go. In no aspect of the case can you give vindictive or exemplary damages,

nor can you give, as I have already instructed you, mere speculative damages. You may now retire to deliberate upon your verdict.

The jury withdrew, and after deliberation returned and rendered a verdict in favor of the plaintiff for six cents damages.