(27 Misc. Rep. 373.)

### In re RIVERSIDE PARK EXTENSION.

(Supreme Court, Special Term, New York County. May, 1899.)

1. APPROPRIATION OF LANDS FOR PARK—TIME OF VALUATION—INTEREST ON AWARD—TAXES.
     Where, under Laws 1894, c. 152, appropriating lands for park purposes, and providing for the appraisal thereof, the lands are properly valued as of the date of the passage of the act, the owners thereof, remaining in possession until confirmation of the award, are not entitled to interest on the award, or to repayment of the sums paid by them for taxes during such time.

2. LAND RECLAIMED FROM NAVIGABLE RIVER.
     When the bulkhead line of a navigable river has been advanced subsequent to a grant by the city of lands under water to the owner of the adjacent uplands, with wharfage privileges, wherein it was agreed that it should not operate further than to pass the title of the city to the granted premises which extended to the old bulkhead as fixed by the harbor commissioners, the city becomes the owner of the lands reclaimed by such extension, and, while the grantee of the city is entitled to compensation for the destruction of the easement over the land under water necessary to reach his wharf, he is not entitled, in condemnation proceedings, to compensation for the land between his wharf and the new bulkhead line.

Motion to confirm report of commissioners in condemnation proceedings under the Riverside extension act. Objections by Standard Gaslight Company and others. Confirmed.

John Whalen (Franklin Bartlett and Charles D. Olendorf, of counsel), for the motion.

James A. Deering, for Standard Gaslight Co.

Eugene A. Philbin, for John D. & Thomas E. Crimmins.

Samuel E. Duffey, for Thomas Smith.

NASH, J. This is a proceeding, under chapter 152, Laws 1894, known as the "Riverside Park. Extension Act," for the appraisal of the lands, including land under water, laid out, appropriated, and set apart by the terms of the act for the extension of Riverside Park and other public uses. The confirmation of the report of the commissioners is opposed by all of the landowners objecting, upon the ground that the valuations put upon their lands are inadequate, and not a just compensation for the lands taken.

Upon the question of compensation to the landowners, it was urged by them before the commissioners that the just compensation which the constitution guaranties to the owners of the lands taken by right of eminent domain requires a valuation as of the present time, or, if valued as of the date of the passage of the act, March 24, 1894, then with interest upon such valuation from that date, and the taxes since imposed upon the lands of the city, less the rentals received, or the value of the use and occupation of the property to the owners for the same period. It is conceded, as upon authority it must be held, that the valuation should be as of the time of the appropriation of the lands, viz. the date of the passage of the act. The contention of the landowners now is that there must be added interest and taxes, less rentals received, in order to give to them the compensation to which they are entitled. Many authorities are cited in support of this contention, which bear more or less directly upon the question, but I am of the opinion that I am concluded by the decision of the general term in this department, in a case precisely like the one at bar. In re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750. There it was held that the cases in this state, which hold that the value to be taken by the commissioners in making their awards was that existing at the time of the report, were cases in which the land was not to be taken immediately, and to be paid for as soon as its value could be ascertained; the distinction being that when the land is to be immediately applied to the public use, condemnation following upon the location, a different rule is applied from that application to those cases in which there is no immediate intention of acquiring the title. The act then under consideration (chapter 522, Laws 1884, as amended in 1888), laying out parks in New York City, appropriated the lands to be taken for public use as in the act now under consideration, and it was held that the lands were to be valued as of the date of the passage of the act, and that the owners were not entitled to interest upon the awards. The time which had elapsed between the date of the passage of the act and the date of confirmation was about the same there as here. The commissioners, as appears from the case stated in their report, had considered and allowed for the delay since making the awards, and for taxes since imposed; but it was distinctly and clearly held that, as stated in the opinion, both upon principle and authority, the owners were not entitled to interest upon the awards nor to an allowance for taxes. It is stated, in the opinion of the court by Van Brunt, P. J., that one of the objections of the landowners was that, if the commissioners assessed the value of the land as of the date of the passage of the act, the owners of the land, although in possession of the same, and receiving

the rents and profits thereof, should have been allowed interest upon the award from said date up to the payment of the amount awarded, and should also be allowed for the taxes paid during the same period. The opinion upon this question concludes: "The same principle is applicable to the question of taxes assessed upon the property during the time during which the owners have been in possession. They had the use and occupation of the property, and derived the profits therefrom, and, under a very familiar principle of law, were bound to keep down the annual taxes and incumbrances upon the property which were assessed thereon during the period of their enjoyment." It appears that the commissioners there took into consideration the delay there would be in realizing upon the awards, and made their estimates accordingly liberal, but the whole discussion of the question was as to whether interest upon valuations as of the date of the passage of the stated act was recoverable, and it was clearly and distinctly held that it was not. The discussion of the question and the adoption of the rule as applicable to the case were wholly unnecessary and gratuitous, if the commissioners eo nomine, or in fact, had allowed interest and taxes upon valuations as of the date of the passage of the act. It is expressly stated in the opinion, that "the owners were not entitled to interest upon the awards nor to an allowance for taxes paid seems also to be settled upon principle and authority." The Messrs. Crimmins claim that they have not been allowed for sufficient land. The original grant by the city, under which they hold their title, was made in 1865, and it conveyed to Peter B. Armory all that certain lot of land, and land under water in front of upland, belonging to the party of the second part; describing land extending from the original line of high water of the Hudson river between Sixty-Sixth and Ninety-Seventh streets westerly to "the bulkhead line as established by the harbor commissioners in the Hudson river," known as the "Bulkhead Line of 1857." The grant contained a covenant that the party of the second part "shall and lawfully may, from time to time, and at all times hereafter, fully have and enjoy, take and receive and hold, to his and their own proper use, all manner of wharfage, cranage, advantages, or emoluments growing or accruing by or from that part of the exterior line of the said city lying on the westerly side of the hereby-granted premises fronting on the Hudson river." To which was added: "And it is further agreed by and between the parties to these presents, and the true intent and meaning hereof is, that the present grant, and every word and thing in the same contained, shall not be construed or taken to be covenants of warranty or of seisin of the said parties of the first part, or their successors, or to operate further than to pass the estate, right, title, or interest they may have or may lawfully claim in the premises hereby granted and conveyed by virtue of their several charters and the various acts of the legislature of the state of New York." The legislature, by an act passed in 1837 (chapter 182, Laws 1837), provided that Thirteenth avenue, as laid out on a map dated March 10, 1837, and approved by the mayor, aldermen, and commonalty of the city of New York, should be "the permanent exterior street or avenue in the said city along the easterly

shore of the North or Hudson river, between the southerly line of Hammond street and the northerly line of One Hundred and Thirty-Fifth street." By act of congress, as it is stated, passed the 11th of August, 1888, a new bulkhead line was established, at a distance of about 350 feet westerly from Twelfth avenue. By this legislation the city gained the right to extend the line of solid filling 250 feet westerly from the bulkhead line of 1857, towards its westerly boundary, Thirteenth avenue, as laid out by the city on the map of 1837. The city had already obtained the right from the state (Laws 1871, c. 574), and in 1893 its powers to establish new bulkhead lines was confirmed by the legislature (Laws 1893, c. 397).

The contention of these claimants is that the rights which accrued to the city by this legislation also accrued to them, and they "demand compensation for wharfage rights to a point beyond the [new] line of solid filling, and for the incidental rights that would attach thereto." Their claim is put by counsel into several propositions, which, taken together and in substance, is that their rights are as owners of the land under water, extending to the new bulkhead line, with the right of solid filling thereto; in short, that they are to be compensated for wharfage as if their wharf were in fact extended to the new line.

The position taken by counsel can best be stated by quoting from his brief:

"The act of congress of 11th August, 1888, allowing the extension of the physical line of the city into the river, accrued to the benefit of these claimants as well as to the city. Thus, it was held in Williams v. Mayor, etc., 105 N. Y. 419, 429, 435, 11 N. E. 829, that when the state granted to the city wharf rights which might extend into the deep water, covering its own land, it granted two things: Property in the land covered by the wharf and occupied by it, and an easement for the approach of vessels in front. That the grant of the new wharf upon the new exterior line carried with it a right of access and approach over the state's land under water, which, if the state permitted it to be filled, would belong to the city. It was further held that such rights passed to the city's grantees, but would not accrue to a mere riparian owner, who had not obtained a grant. If the city, a quasi department of the state, could thus acquire title as against the state, certainly its grantee for a valuable consideration could gain such title as against it."

The grantee of the city for a valuable consideration certainly could gain from it all the rights it acquired from the state; that is, the grantee of such rights as it had acquired. The difficulty with the case of these claims is that they are not the grantees of such rights. They take only such lands as were conveyed by the grant to Armory in 1865, and the rights incident thereto,—the right of wharfage to the bulkhead line of 1857. Nothing additional can be predicated upon the covenant of enjoyment of the "wharfage, cranage, advantages, or emoluments growing or accruing by or from that part of the exterior line of the city lying on the westerly side of the hereby-granted premises, fronting on the Hudson river." This covenant would have been implied without being expressed. The grant of the land itself would have carried with the easement of the wharfage and approach over the lands under water lying in front. Williams v. Mayor, etc., supra. The city could only convey lands of which it was the owner at the time of the grant. Any subsequently

acquired lands or rights became the property of the city. Van Zandt v. Mayor, etc., 8 Bosw. 375. The case here is precisely that which was before the court in Langdon v. Mayor, etc., 93 N. Y. 129, where the city, subsequent to its grant of land and wharfage, acquired additional rights, and extended the wharf or bulkhead line into the river in front of the premises granted, erected a bulkhead on the new line, and filled in the intervening space between it and the old bulkhead, thus destroying its use as a wharf. It was held that, while the city had the right to acquire the right to fill up the lands granted to it by the state, it had not the right to destroy or impair the easement it had theretofore granted without compensation therefor to the owner. It was suggested in Williams v. Mayor, etc., supra, that if the acts of legislation, the same now under consideration, have the effect of conveying to the city all lands belonging to the state, lying between the new bulkhead line and the old wharf, "it must also have been their effect to convey to private proprietors all lands belonging to the state between the land of such proprietors and such bulkhead line." That doctrine, the opinion states, has been expressly denied, citing Van Zandt v. Mayor, etc.; and Finch, J., states the conclusion and the reason for it, which are equally applicable here, as follows:

"But the alleged vicious conclusion does not follow, because the mere riparian proprietor has no right to the new outside wharf, or to use or approach the same, or take the wharfage therefrom, which is the right of the city. The private owner has no interest in the new bulkhead which can carry him over the intervening space, and the city has. The former has simply been deprived of his rights, and suffered a loss of his property, for which he is entitled to compensation."

So, here, the claimants are mere riparian proprietors, whose rights as such have been taken and appropriated by the city under a new grant from the state, for which and the lands actually taken they are entitled to compensation, and not for any lands outside of the boundaries of their grant or rights incident thereto. This I understand to be the conclusion arrived at by Mr. Justice Beach in the unreported case of Baylies v. Mayor, where the precise point here involved was under consideration. My conclusion is that the report of the commissioners should be confirmed.

Report of commissioners confirmed.