## DAVID COBB *vs.* CITY OF BOSTON.

In proceedings under the St. of 1867, *c.* 308, to recover damages for land taken thereunder by the city of Boston, the owner can recover only the value at the time of taking, although he has been induced by the city authorities to expend money on the land after the taking.

In a proceeding against a city to assess the value of land taken by it, the owner, if he testifies in his own behalf, may be asked on cross-examination what he paid for the land, although not asked on the direct examination his opinion of its value.

In assessing the value of a leasehold estate, taken by the city of Boston under the St. of 1867, *c.* 308, damage to the business of the lessee and its goodwill is not to be included.

At a hearing before commissioners to assess the value of estates at the time they were taken by a city, a witness called by the city as an expert in real estate, who had examined the estates six months before the taking, was allowed by the commissioners to give from his memoranda the valuation he then put upon the estates. *Held,* that the owners of the estates had no ground of exception.

If commissioners under the St. of 1867, *c.* 308, have assessed the value of land taken by the city of Boston, and the landowner applies for a jury, the city cannot be deprived of the right to offer the report as *primâ facie* evidence to the jury.

The provision of § 10 of the St. of 1867, *c.* 308, that it shall be the duty of this court to instruct commissioners appointed upon a bill in equity praying for compensation for land taken by the city of Boston, under the statute, does not apply where the bill is brought against the city alone, and not, in the nature of a petition of right, against the Commonwealth.

In assessing the damages to a tenant for years of an estate taken by the city of Boston, under the St. of 1867, *c.* 308, evidence is admissible on his part that a new lease was made to him before the taking, to take effect upon the expiration of his old lease, although the taking was before such expiration.

BILL IN EQUITY by David Cobb in his own behalf, and in behalf of all other persons having estates in the land taken by the defendants under the St. of 1867, *c.* 308,* alleging that an estate

---

* AN ACT TO ENABLE THE CITY OF BOSTON TO ABATE A NUISANCE EXIST-ING THEREIN, AND FOR THE PRESERVATION OF THE PUBLIC HEALTH IN SAID CITY.

*Be it enacted, &c., as follows :*

" SECTION 1. The city of Boston may purchase or otherwise take the lands or any of them in said city, with the buildings and other fixtures thereon, situated and lying within the district bounded on the northwest by the northwesterly line of Columbus Avenue, extended to Church Street; on the north by the line of the southerly side of the passenger station of the Boston and Providence Railroad Corporation, and the same extended to the westerly line of Church Street; on the east by Pleasant Street; on the southeast and south by Tremont Street and the Boston and Worcester Railroad; and on the west by

of his had been taken under the statute, and praying that the defendants might be decreed to pay him full compensation therefor. Asahel A. Smith and Mary Ann Smith became parties to

Ferdinand Street. Said city shall, within sixty days from the time they shall take any of said lands, file in the office of the registry of deeds for the county of Suffolk, a description of the lands so taken, as certain as is required in a common conveyance of lands; and a statement that the same are taken pursuant to the provisions of this act; which said description and statement shall be signed by the mayor of said city; and the title to all land so taken shall vest in the city of Boston, and if any party whose land is taken shall agree with the said city upon the damage done to him by the said taking, the same shall be paid to him by the said city forthwith. And it shall be the duty of the city of Boston, forthwith to raise the grade of said territory so taken or purchased, laying out and filling up the same with good materials, with reference to a complete drainage thereof, so as to abate the present nuisance and to preserve the health of the city, and in no wise to affect injuriously the lands of the Commonwealth or its grantees in the Back Bay, or the system of drainage therein.

" SECTION 2. Any person entitled to any estate in any part of the lands so taken, may at any time within one year from the time when the same shall be taken, as well in his own behalf, as in behalf of all other persons having estates in the land so taken, file a bill in equity in the supreme judicial court, in the county of Suffolk, setting forth the taking of the complainant's land, and the condition of the same in respect to its capacity for drainage, and whether the complainant claims any and what damages against the city of Boston, or the Boston Water Power Company, or any other corporation or person, by reason of any and what wrongful act or omission by their causing a diminution in the value of his land at the time of said taking, and praying an assessment of damages against such parties. And upon the filing of such a bill, the said court shall cause notice of the pendency of said bill to be given to the parties named therein as defendants, according to the course of courts of equity, and also public notice thereof, to all persons in whose behalf such bill shall be filed, to appear and become parties thereto, if they shall think fit to do so. Said court shall prescribe how such public notice shall be given, and what length of time shall be allowed for appearing and becoming a party to such suit. Any party failing so to appear and become a party within the time prescribed by the court, shall be forever barred from recovering any damages on account of such taking. Each person so appearing and becoming a party, shall file a written description of the land in which he claims an estate, together with a plan thereof, so as clearly to distinguish the same from all other lands, and shall also declare what estate he claims therein. If he claims that the value of said lands at time of taking the same was lessened by any unlawful act or omission of the city of

the bill, and prayed that the defendants might be decreed to pay for land of hers taken by them, and Edwin M. Montague and

Boston, or the Boston Water Power Company, or any other corporation or person, so that the value of the land in its condition when taken, would not be a just compensation for all the estate and rights of the party in and in reference to the same, such party shall also state what such injury is, and how and by whom the same had been, or is, caused, and what right or title of the party is violated, and what amount of damages in gross is claimed by him, as compensation therefor, from each of the parties defendant.

" Section 3. Upon the expiration of the time allowed for appearance to the said bill, the said court shall appoint three commissioners, who shall receive such compensation as said court shall fix, to be paid by the city of Boston.

" Section 4. It shall be the duty of the said commissioners, after due notice, to hear each of the said parties, including the said city of Boston, and the said Water Power Company, and other parties named as defendants, and to assess the present value of each parcel of the said land claimed by any party so appearing with its capacity for drainage in its present condition; and the amount in gross, if any, of damages done to such parcel of land by reason of any unlawful act or omission of the city of Boston, or the Water Power Company, or any other party defendant, affecting its value at the time of said taking.

" Section 5. Said commissioners or the major part of them, shall make report to the said court of their doings, and when requested by any party, of the evidence touching any exception intended to be taken by him.

" Section 6. Any party aggrieved may either except to the report of the said commissioners, and have the exception heard and determined by the said court, according to its course as a court of equity, or may apply to the said court to have proper issues framed and tried by a jury, and proceeded in as in other cases of issues ordered by the said court. And on the trial of any such issue, the report of the commissioners respecting its subject matter shall be *primâ facie* evidence of what is therein stated.

" Section 7. When it shall be finally determined what amount of damages any party is entitled to recover against the city of Boston or the Boston Water Power Company, or any other party defendant, a separate decree shall be entered accordingly, and execution therefor shall be issued, without regard to the pendency of the claims of any other party or parties, or of other claims of such complainant.

" Section 8. If any party shall-elect a jury, he shall recover his legal costs, if the award of the commissioners shall be altered in his favor ; otherwise he shall be liable for the legal costs of the other party or parties.

" Section 9. Nothing in this act shall be construed as exempting the city of Boston from any obligation it would otherwise be under, to make compensation to the owners of lands abutting on or near to the territory described in the firs*

Herman Askenasy also became parties, and each prayed for compensation for his land taken by the defendants.

Commissioners were appointed, who, before making their report, requested the court to instruct them as to their duty on certain points; the parties were heard before the chief justice, and he refused the request.

The commissioners made their report, in which they determined the value of the estates of the several plaintiffs, on May 9, 1868, the date of the taking by the defendants, which the parties agreed was the time at which the value should be assessed.

---

section of this act, for any injury it may do to such lands in any acts of raising, filling, or draining said territory or any part thereof.

" SECTION 10. If any party shall allege that the value of his land at the time of the said taking had been diminished by any act or omission of the Commonwealth or its agents or officers, for which diminution the Commonwealth ought to make him compensation, he shall make the allegations relating thereto in a separate article of the bill, in the nature of a petition of right against the Commonwealth, and the court shall cause notice thereof to be served upon the attorney general. And the attorney general shall appear and may make a separate answer thereto; and the commissioners appointed by the court to assess damages under this act, are hereby empowered to make a separate report of the damages, if any, caused to any party by any act or omission, for which the Commonwealth is responsible, and shall, at the request of the attorney general, report the evidence, together with the grounds of their opinion why the Commonwealth ought to pay the same. And it shall be the duty of the supreme judicial court to instruct the said commissioners on any matter of law involved in their decision, at the request of any party or of the commissioners, and the proceedings shall be conformed as nearly as possible to those in suits in equity. And the final report of the commissioners on the subject of the claims upon the Commonwealth, shall be filed in court in the cause, and a duplicate thereof transmitted to his excellency the governor. And if in the opinion of the court, it is reasonable that the Commonwealth bear any part of the costs or expenses, the same shall be certified with the said report.

" SECTION 11. Said court may make all orders and decrees necessary to carry into full effect the intent of this act, and may at its discretion, at any stage of the proceedings, order a party to give security for the payment of damages or costs.

" SECTION 12. All legal costs which shall accrue in proceedings under this act, not otherwise provided for, shall be paid as the said court shall order.

" SECTION 13. This act shall take effect upon its passage."

It appeared from the report that Cobb, and Smith and his wife, offered to introduce evidence that they expended money and labor, after the date of the taking by the defendants, in making improvements on their respective estates, and that they incurred this expense in consequence of votes and directions of the city authorities and on their assurance that they should be compensated therefor, but the commissioners excluded the evidence.

It further appeared that on the hearing in the case of Mrs. Smith, her husband, who was called as a witness on her behalf, was asked, on cross-examination by the defendants, when he bought the estate and what he paid for it. The plaintiffs called attention to the fact that they had not asked the witness his opinion of the value of the land, and objected to the question; but the commissioners allowed it to be put, and the witness answered that he bought the estate in 1864, and named the price he paid for it.

It also appeared that on the hearing in the case of Montague, who occupied an estate taken by the defendants, under a lease for three years from October 1867, he offered evidence as to the annual profits of his business as a grocer upon the premises, and as to the damage to his business and its goodwill, but the commissioners rejected the evidence.

It also appeared that on the hearing in the case of Askenasy who occupied an estate taken by the defendants, under a lease which expired in July 1868, he offered to introduce in evidence a second lease of the same premises to him, dated in August 1867, and running for three years from the expiration of his other lease, but the commissioners ruled that he had no estate, by reason of this second lease, which they could value.

It also appeared that a witness, called by the defendants as an expert as to the value of the several estates, " having made an examination of the several estates in the autumn of 1867, was allowed," against the plaintiffs' objection, " to give from his memoranda the valuation he put upon the estates at that time."

To the rulings above stated the plaintiffs excepted, and Cobb and the Smiths filed a statement alleging that the report did not give with sufficient fulness the evidence offered as to the expenses

incurred after the taking, and setting forth the facts as to these expenses in more detail.

The plaintiffs moved that the report might be set aside, or recommitted with instructions from the court, or if this was not done, and the exceptions were overruled, then that they might have a trial by jury "independent of and without said report, upon such legal evidence as they may adduce."

The case was reserved by *Colt*, J., on this motion, for the consideration of the full court.

*A. A. Ranney*, for Cobb, Mary Ann Smith, & Montague.

*J. H. Bradley*, for Askenasy.

*J. P. Healy*, for the defendants.

AMES, J. The effect of the statute (St. 1867, *c.* 308) under which these proceedings have been had, is to place the city in the position of a purchaser of the land taken. *Dingley* v. *Boston*, 100 Mass. 544, 554. The object of the bill in equity is merely to determine the just and reasonable price that each proprietor ought to be paid for his separate estate. The words of the statute are that the commissioners are to assess the present value of each parcel of the land, and it is assumed, correctly as we think, by both parties, that the "present value" means the value at the time of the taking, and not that of the date of the statute. The damage which each proprietor is entitled to claim is the value of the estate which is taken from him, and the whole investigation before the commissioners is for the purpose of determining that value. That is the subject matter of their report, and they are not required to report anything else, unless some exception to any of their rulings or decisions should render it necessary to report the whole or a part of the evidence. That being the case, they could not, without going beyond their commission, receive any evidence, or make any adjudication, upon damages or claims accruing after the taking of the land. If any of the proprietors have been induced to expend money or labor in making improvements upon any land or buildings, since the taking, in consequence of any votes, directions or assurances from the city authorities, the remedy must be sought in some other form of proceeding. The plaintiffs complain that their offer of

evidence on this point is not fully and sufficiently stated in the report of the commissioners ; and they have accordingly endeav·· ored to cure this defect by filing a written document, in which they undertake to go into details upon this subject. But notwithstanding the explanation so furnished, the fact still remains that it is an attempt, on the part of the plaintiffs, to press upon the consideration of the commissioners certain specific claims, accruing since the land was taken, not submitted to them by their commission, and not included in, or relevant to, the inquiry as to the value of the several estates at the time of the taking. The first of the exceptions reported by the commissioners is therefore overruled.

In the case of Mary Ann Smith, her husband was examined as a witness in her behalf, and upon cross-examination, he testified that he bought the estate in 1864, and named the price which he gave for it. We think that, although his opinion of the value had not been asked in the direct examination, the commissioners had a right, in the exercise of their discretion, and for the purposes of cross-examination, to allow such a course of inquiry ; and the exception upon this point is therefore overruled.

The commissioners were right also, in the case of Edwin M. Montague, in excluding the evidence offered as to the annual profits of his business as a grocer upon the premises. The only question was as to the value of his unexpired lease, and not as to the profits of his business, or the inconvenience of removing it to some other place. The goodwill of the business was no part of his lease, and under this statute could not be made a subject of inquiry, as constituting part of its value. *Edmands* v. *Boston*, 108 Mass. 535.

It is further objected that a witness called by the defendants as an expert in real estate was allowed to give, from a memorandum of his own, the valuation which he had put upon the several estates in the autumn of 1867. We do not understand that the memorandum was offered as being of itself evidence, but that the witness testified to his present recollection of the truth and correctness of a valuation, which he made six months previous to the taking. The fact that he made a record at the

time ought not to prevent him from testifying to the matters which he had so recorded, if at the time of testifying he knew them to be true. Under such circumstances, the commissioners might in their discretion permit him to read from his memorandum. In an inquiry as to the value of property at any given time, it is impossible to say that evidence as to its value at an earlier date, is incompetent and inadmissible, unless that earlier date is so remote as to have no importance or relevance in the inquiry. It cannot be said to be too remote in this instance.

The plaintiffs then claim the right, if their exceptions cannot otherwise be sustained, to go to the jury "independent of and without" the report of the commissioners. But to allow this claim would be to repeal the statute, in one of its leading and most characteristic provisions. The hearing before the commissioners is the first step in the trial of the cause. Either party may appeal from their decision, and claim a trial by jury, but upon such trial, the report of the commissioners is made *primâ facie* evidence of what is therein stated. It is true that the statute provides, in § 6, that either party aggrieved by the determination of the commissioners may except to the report, or claim a trial by jury, but there is nothing in the statute that countenances the notion of a trial by jury without and independently of that report. On the contrary, the report is expressly made evidence at the trial, and either party has a right so to use it. That is a right which we have no power to take away. If the commissioners have fallen into any error in matter of law, it can be corrected upon exceptions heard and determined by the court, according to its course as a court of equity; and when the report is fully so corrected, and not before, it " shall be used as *primâ facie* evidence of what is stated therein." The provision, that it shall be the duty of the court to instruct the commissioners upon any matter of law involved in their decision, § 10, is intended only for the special case in which the bill contains a separate article in the nature of a petition of right against the Commonwealth. The present bill contains nothing of the kind, and the only mode, therefore, in which the court can instruct the commissioners, in this case, upon matters of law, is by disposing of such exceptions as may be regularly taken to their report.

In the case of Herman Askenasy, the commissioners fell into an error in excluding the evidence offered as to the value of his second lease. The second lease having been delivered and ac-cepted before the expiration of the first, and before the taking of the land, prolonged his estate in the premises, and this should have been considered in computing his damages. *Bacon* v. *Bow-doin*, 22 Pick. 401. *Weed* v. *Crocker*, 13 Gray, 219. The excep-tion in that case must therefore be sustained, but all the other exceptions taken by the plaintiffs are overruled.